## McCanuel *v.* Jones & Laughlin Steel Company, Appellant.

*Negligence—Master and servant—Dangerous material—Assurance of safety—Explosion of wet manganese.*

In an action by an employee against his employer, a steel company, to recover damages for personal injuries sustained by an explosion of wet manganese, a verdict and judgment for plaintiff will be sustained where the evidence tends to show that manganese when wet will explode; that the manganese furnished to the plaintiff was in a wet condition; that on the day before the accident plaintiff notified the foreman of its wet condition; that the foreman requested him to remain with the assurance that dry manganese would be supplied; that plaintiff had nothing to do with furnishing the manganese, was not required to know its condition, and knew nothing about the particular manganese which exploded until after the accident.

Where an employer undertakes to correct wrongful acts of fellow servants, and assures an employee that he may continue employment free from danger, and the employee has no reasonable means of knowing that the acts had not ceased, the master will be liable for an injury resulting from such acts.

Argued May 4, 1916. Appeal, No. 38, April T., 1916,

by defendant, from judgment of C. P. Allegheny Co., Oct. T., 1913, No. 2076, on verdict for plaintiff in case of David McCanuel v. Jones & Laughlin Steel Company. Before ORLADY, P. J., HENDERSON, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before BROWN, J.

The circumstances of the accident are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $1,125. Defendant appealed.

*Error assigned* was refusal of binding instructions for defendant.

*William A. Challener,* with him *Clarence Burleigh,* for appellant, cited Miller v. American Bridge Co,. 216 Pa. 559.

*W. S. Maxey,* for appellee, cited: Martin v. Atlantic Transport Co., 237 Pa. 15; Powell v. S. Morgan Smith Co., 237 Pa. 272; Valjago v. Carnegie Steel Co., 226 Pa. 514; Glass v. College Hill Borough, 233 Pa. 457.

OPINION BY KEPHART, J., July 18, 1916:

It is charged that the defendant furnished wet or damp manganese to the plaintiff, which, when placed in a ladle of molten metal, exploded, throwing a portion of the ladle's contents on the plaintiff, causing him to lose the sight of one of his eyes. The liability of this material to explode was shown by the evidence. The mere happening of the accident would not charge the defendant with liability. The defendant must be guilty of some negligent act.

The evidence shows that from the time the material left the sea-board and reached the defendant in box cars, it was placed in covered places and taken from bins to a

crusher. Up to this point the plaintiff's evidence does not seem to disclose any neglect of duty. When the material leaves the crusher on the way to the ladle, there is time and opportunity for the material to get wet, and there is evidence from which the jury could find that it was wet or damp when it was used by this plaintiff. A witness states that about the time of this accident he had seen this material "lying in water; water all around." This may have been partly due to throwing water on it from the water bucket used for drinking purposes, or it may have come from the elements. There was some evidence that the manganese was wet or damp when in the stock house or bins. The time does not appear or how often, but this evidence shows that the efforts of the defendant to deliver the material dry were not always or uniformly successful. The plaintiff states that twenty minutes after he was injured he took from the pile on which he was working a lump of manganese that was wet. He says the platform on which it rested was wet or damp and on the evening before he had been using wet manganese. The court could not, as a matter of law, declare that the defendant had fully complied with its duty to furnish dry manganese, according to the custom and usage of the trade. The argument that this condition resulted from the acts of fellow servants cannot be sustained.

Assuming that it did become wet by an act of a fellow servant, the plaintiff notified the foreman of its condition the day before he was injured. He was requested by the foreman to remain with the assurance that dry manganese would be supplied. The plaintiff had nothing to do with furnishing the manganese and knew nothing about it until after the accident. He was not required to know its condition. The foreman, having directed the employee to assume his duties, under such circumstances it was his duty to see that materials in a reasonably proper condition were furnished. The cause of the improper condition was immaterial under this promise: Powell v.

S. Morgan Smith Co., 237 Pa. 272. His assurance not only covered the company's duties but covered the risk from the carelessness of employees who were in his immediate control, and it was his duty to see that these careless acts complained about were stopped. Where the employer undertakes to correct wrongful acts of fellow servants, and assures an employee that he may continue employment free from danger and without risk, from such careless acts, and the employee had no reasonable means of knowing that the acts have not ceased, the master will be liable for an injury occurring from such acts. This case is distinguished from the one wherein Justice MOSCHZISKER wrote the opinion, Crimmins v. Farquhar, 250 Pa. 569. There the employee had an opportunity of knowing, before the accident took place, whether the master had done as promised, and he knew that the fellow servant was still committing the wrongful acts the master had promised to stop.

The mere fact that there was on hand a lot of dry manganese does not relieve the defendant of the duty of seeing that such manganese is delivered, barring, of course, the unauthorized acts of fellow servants. If, while such servant is delivering it, or it is awaiting use after delivery, it is made wet through acts which give rise to an inference that they were within the defendant's control, the defendant will be liable. It was for the jury to determine, considering the description given by the witness of this material lying out and near the platform, in a wet condition, and the other evidence in the case, whether the defendant had met its duty according to the common and ordinary practice and general usage.

The evidence showing dry manganese is confined to the manner in which it is handled; depending on these circumstances it is subject to the inference that it might have gotten wet in a number of ways as suggested by the plaintiff's witnesses. To sustain the theory that the manganese was dry, we must assume that it was in proper condition when it was received from the railroad

company. But this question is not material in view of the testimony as to the actual condition of that much of the manganese which was then being used.

The defendant's seventh point did not fully present the facts, but the proposition of law and the facts stated therein are correct as far as they go. The point leaves out the care of the manganese from the crusher to the ladle, except as to the possibility of its becoming wet through the acts of a fellow workman; as suggested by the appellant, "when something was left in the tin after using the water (from the bucket used for drinking purposes) they would throw it in the pile." Clearly the evidence warranted more than such conclusion. The defendant, by the affirmance of this and the sixth point, received a very favorable presentation of its position, beyond that which it was entitled to under the evidence. Ordinary usage and practice does not mean that unsafe materials may be given employees with which to work, when it is admitted that through care and caution safe materials may be given. The doctrine of ordinary usage does not supplant that of supplying a reasonably safe place to work, with reasonably safe materials, consistent with the nature and character of the employment. The method of doing the work is not in question. The defendant's duty admittedly did not end with the material at the crusher, but continued up to its being placed in the ladle. It, of course, would not be charged with the act of a fellow servant in causing the material to become wet. In this view of the case we feel that the court did not commit error in submitting the question to the jury to determine from all the evidence whether or not the defendant was negligent in supplying the wet or damp manganese as complained of.

Judgment affirmed.